JOHN T. McKEOWN, ET AL., APPELLANTS, VS. T. S. COOG-LER, ET AL., APPELLEES.

1. The lien in favor of persons who furnish supplies, &c., to enable a party to cultivate land and raise a crop, need not be given before the supplies are furnished, but is valid if put in writing and recorded afterward, there being no intervening equities or liens in favor of other parties.

2. Fraud is not to be imputed to an honest creditor who is preferred by a failing debtor as against another creditor who had been promised payment by the debtor out of the proceeds of the same property assigned to the former to secure him.

3. Where a writ of attachment is levied upon goods, and afterwards an execution is levied upon the same goods, and the sheriff, before judgment in the attachment suit, advertises the goods for sale under the execution, a court of equity has no jurisdiction to enjoin the sale under the execution at the instance of the attaching creditor, the court at law having ample power to control the process and its officer ; and the sheriff acts at his peril in selling the property under a junior levy.

4. After dismissing a bill filed by an attaching creditor to restrain a sale under a subsequent levy by execution, it is improper to decree that the property under levy in the hands of the sheriff be delivered to the debtor. The sheriff is entitled to it by virtue of his levies.

5. Nor should the decree in such case dismiss the attachment, as such dismissal, if proper, should be made in the attachment suit.

Appeal from the Circuit Court·for Hernando county.

John T. McKeown and C. C. Keathley, the appellants, filed their bill for an injunction against Coogler (as plaintiff in a judgment against Lowrey and St. Clair) and Mickler, sheriff, holding an execution issued under said judgment, to restrain the levy and sale of certain tobacco of Lowrey and St. Clair.

The bill alleges that Lowrey and St. Clair being about to engage in cultivating tobacco and other farming operations in 1878 applied to appellants as merchants to furnish supplies to aid them in their business, and agreed to pay for such supplies out of the proceeds of the tobacco to be grown by them during that year, and to hold the tobacco until sold subject to the order of appellants, and though L. & St. C. declined to give appellants a statutory lien upon the crop, yet they promised that they would not give such lien to any other person, and upon the faith of this promise supplies and advances were made by appellants to the amount of $434.

They allege that in November, 1878, after the tobacco raised by L. & St. C. had been gathered and housed, the latter conspired with Coogler to defraud appellants of the amount due them, and gave him a paper purporting to be a statutory lien on said crop for the sum of $597 for advances alleged to have been made by Coogler to L. & St. C. to aid them in the same farming operations ; that L. & St. C. also at the same time gave Coogler a confession of judgment for that amount, which confession of judgment is also alleged to be fraudulent, and Coogler in March, 1879, placed his said statutory lien upon record ; that on July 16, 1879, appellants commenced suit against L. & St. C. by attachment for the amount of their claim, and the sheriff attached the tobacco. On August 2 Coogler caused his judgment to be entered, and had execution issued and lev-

ied on the same tobacco, and advertised it for sale to satisfy the judgment, all which doings of Coogler are alleged to have been contrived for the purpose of defrauding appellants and depriving them of their equitable lien. They prayed an injunction to restrain the sale under the execution, and that the tobacco be sold under the order of the court and the proceeds paid into court to await the determination of the respective rights of the parties. In an amended bill they pray that the pretended lien be annulled and set aside, at least as to so much thereof as shall be ascertained not to have accrued for supplies advanced by Coogler to L. & St. C. to enable them to cultivate the tobacco.

. The defendant (Coogler) answered denying all fraud and combination charged, and averred that his claims against L. & St. C. were for goods, wares and merchandise sold and delivered to L. & St. C., and advances made to pay their hands in cultivating the crop of tobacco amounting to $492.67, and for lumber furnished to build a tobacco house and a small house on the place to live in, amounting to $105.27, making in all the sum of $597.94, the amount secured by the lien and by the judgment.

An injunction was allowed upon the filing of the bill. Testimony was taken by the parties and the cause submitted to the court, whereupon a decree was rendered dismissing the cause. It was further decreed that Mickler turn over the tobacco to Lowrey and St. Clair; and, further, that " as the attachment suit of McKeown & Keathley against Lowrey & St. Clair, now pending in the Circuit Court, was submitted at the same time as the cause of McKeown & Keathley was, and as the said attachment suit virtually depends and turns upon said injunction suit, it is ordered that said attachment suit be dismissed."

This appeal is from said decree, which is alleged to be

erroneous in that it should have been decreed that the lien taken by Coogler was taken for the benefit and protection of all the parties furnishing supplies to raise the crop; that the writ of attachment should have been decreed to be a lien having preference to the execution upon Coogler's judgment; that a sale of the tobacco should have been ordered, and the proceeds held for *pro rata* distribution among the several claimants, and that it was error to decree a dismissal of the attachment suit.

*W. .T. Barnett* and *J. B. Wall* for Appellants.

*J. T. Magbee* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

It is an admitted rule that a debtor may give preference to one creditor over another, even if the debtor is in failing circumstances, to the prejudice of the other creditors, there being no fraud on the part of the favored creditor.

There is in the answer a direct denial of the fraud alleged; not only this but the testimony utterly rebuts any idea of fraud on the part of Coogler, whose claim is shown not only by his own testimony, but by the testimony of Lowrey, to be an honest one for supplies furnished to L. & St. C. to enable them to raise the crop and to build a tobacco house on the place in which to care and preserve the tobacco, and a small, cheap dwelling-house for the use of the place. These may well be presumed from the testimony to have all been necessary to carry on these " farming operations," and therefore come within the act of 1870, (Ch. 1739.) The fact that the " lien " was given in writing and recorded several months after the advances were made cannot affect its validity, no credit having meantime been extended by appellants, and no other liens having intervened. The paper creating the lien in favor of Coogler is in the nature of

a mortgage, and, when duly recorded, is effectual against other liens attaching afterwards.

Upon the case made by the pleadings and proofs we cannot say that any fraudulent intent is established against Coogler in respect to the "lien." Nor do we discover that Coogler has taken any steps looking to a foreclosure of his lien, but has had judgment in an action at law for the amount of his claim, which he is seeking to enforce by a levy upon the property in question.

One of the prayers of the bill is that the sale of the tobacco by the sheriff under the execution be enjoined, because the appellant's attachment was levied upon it before the judgment was entered and the execution issued, and the sheriff threatens to sell under the execution, disregarding the attachment levy.

There is nothing here disclosed which calls for the interposition of the jurisdiction of a court of equity, and it has been held by this court that the remedy at law is ample and convenient, and that, therefore, the chancery court has no jurisdiction thus to interfere with the process of the court of law. Love vs. Williams, 4 Fla., 126 ; Robinson vs. Yon, 8 Fla., 350.

By the general rules of law and practice, as well as by express statute, the courts of law have ample power to control their process and their officers in matters of this character, and, besides, if the sheriff sell property under a junior levy, disregarding the senior, he does so at his peril.

For the reasons above stated the court did not err in dismissing the bill.

There are, however, two other features of the decree which cannot be sustained: 1. It directs Mickler as " Receiver " to turn over the tobacco to Lowrey & St. Clair. We understand from the record that the tobacco was in the custody of the defendant (Mickler) as sheriff under the

levy of the attachment, and also of the execution. The record does not show any ground upon which the property should be discharged of these levies. Lowrey & St. Clair were not parties in this suit in equity, and there is nothing here disclosed showing that they were entitled to the return of the property to them. 2. The decree further dismisses the attachment suit, the two suits having been submitted together, and " the attachment suit virtually depends and turns upon said injunction suit," as recited in the decree. This is essentially affirmative relief in favor of the defendants in the chancery suit and in the attachment suit, without cross-bill, and after dismissing the suit in equity. This is nowhere recognized or tolerated in chancery practice, except in matters of account, or of such like peculiar character as to constitute an exception to the rule. Sanford vs. Cloud, 17 Fla., 557, 574–5 ; Wooten vs. Bellinger, ib., 289.

The facts in the chancery suit may properly have controlled the disposition of the attachment suit, and it may have been the duty of the court to dismiss the attachment suit, but if so the order of dismissal is one to be entered in the attachment suit and not in this suit in equity, in which the merits or the regularity of the proceedings in the attachment suit were not before the court.

The decree dismissing the bill with costs is affirmed, but in so far as it directs the delivery of the tobacco to Lowrey & St. Clair, and decrees a dismissal of the suit of McKeown & Keathley against Lowrey & St. Clair, it is reversed and set aside. Each party will pay his own costs upon this appeal.