352 So.2d 1259 (1977)
FLAGSHIP STATE BANK OF JACKSONVILLE, a Banking Corporation, Appellant,
v.
Costa CARANTZAS, Appellee.
No. CC-470.
District Court of Appeal of Florida, First District.
December 16, 1977.
Rehearing Denied January 5, 1978.
*1260 Calvin E. Hayden, of Smith & Hayden, Jacksonville, for appellant.
John Paul Howard, Thomas R. Welch, Jacksonville, for appellee.
ERVIN, Judge.
Flagship Bank appeals a final judgment which (1) granted a motion to dismiss the Bank's levy upon certain personal property in the possession of the Sheriff of Duval County which was held subject to a prior successful bid by Carantzas, and (2) ratified the bill of sale from the sheriff to Carantzas. We reverse as to that portion of the judgment ratifying the bill of sale.
In the summer of 1973, Flagship obtained two final judgments against the judgment debtor, William B. Lanier, Jr. One judgment was in the amount of $15,792.16, the other in the amount of $8,287.07 with costs of $40.00. Writs of execution were indexed and docketed with the Sheriff of Duval County. Two years later, Carantzas recovered from the same judgment debtor a deficiency judgment of $90,566.62. Carantzas' execution was also docketed and indexed with the sheriff. Carantzas delivered to the sheriff instructions for levy on personal property owned by the debtor and the sheriff published notice of sale stating that the property levied upon would be sold, subject to all prior liens, to the highest and best bidder for cash. The notice referred to all executions which had been docketed with the sheriff, including Flagship's two prior executions.
Notwithstanding the published notification that the property would be subject to cash bids, at the sale held on September 11, *1261 1975, Carantzas successfully bid $31,262.23; of that amount $30,000.00 was in the form of a credit against the outstanding $90,566.62 judgment, the remainder of the bid was in cash to cover the sheriff's costs. The attorney for Flagship appeared at the sale but made no bid. Neither did he then voice any objection to the method of sale, although he had done so prior to the sale and had advised the sheriff's deputy the sale should be held on each execution separately. Since Flagship's two executions remained outstanding, Flagship later gave the sheriff instructions for levy upon the same property which Carantzas had purchased at the execution sale. The property was still in the possession of the sheriff and had not been surrendered to Carantzas. Carantzas then filed a motion in the Circuit Court to dismiss the levy on the ground the property had already been sold, resulting in the extinguishment of Flagship's lien on the property.
Flagship initially argues that the lower court lacked jurisdiction over it because Carantzas instituted no separate proceeding by filing a complaint seeking to determine the validity of the respective liens. Nevertheless the court still had jurisdiction over the res, the goods in custody of the sheriff, and could properly enter a judgment confirming the sale. Jurisdiction of a court over proceedings in rem is acquired by the filing of a complaint with exhibits having reference to the property which may be subjected to the processes of the court. Gribbel v. Henderson, 151 Fla. 712, 10 So.2d 734 (1942). Such an action requires seizure or its equivalent of property within the jurisdiction of the court and the giving of reasonable and fair notice of the action against described property and of the date and place of the hearing. Here Flagship had constructive notice of the execution sale, was advised prior to the sale that the sale would be held as to all three executions at the same time and not separately.
The court properly dismissed Flagship's levy upon property which at the time of the attempted levy was within the custody of the sheriff. Money or property which has come into the hands of an officer of the court by virtue of legal process is regarded as in the custody of the law and once levied upon remains in such custody and is not liable to be taken by another execution. Adams v. Burns, 126 Fla. 685, 172 So. 75 (1936); Young v. Stoutamire, 131 Fla. 535, 179 So. 797 (1938).
Nevertheless the court erred in ratifying the bill of sale to Carantzas. The method in which the execution sale was conducted was clearly irregular. As to personal property, an execution issued on a judgment operates as a lien on the property of the defendant in execution from the time such writ is delivered to the sheriff. Good-year Tire & Rubber Co. v. Daniell, 72 Fla. 489, 73 So. 592 (1916). Moreover priority between the lien of an execution and other claims on the same property is generally governed by considerations as to priority in time, McKeown v. Coogler, 18 Fla. 866 (1882), and if two writs of execution are delivered to the officer, he should execute them in the order in which they are delivered. 13 Fla.Jur., Executions, section 38 (1957).
Love, Sheriff v. Williams, 4 Fla. 126 (1851), held if an officer levies and sells personal property by virtue of a junior writ, the proceeds of the sale may be returned to the junior creditor who was the successful bidder at the sale and may not be attached by the senior creditor. In Love, Williams, the senior creditor, obtained a judgment against a judgment debtor in 1842, and in 1844 a writ of execution was delivered to the sheriff. On November 12, 1849, the courthouse was destroyed by fire and with it all the records of the sheriff's office. On November 14, 1849, Richard H. Wilson, the junior creditor, recovered judgment against the same judgment debtor and later delivered a writ of execution to the sheriff. The sheriff levied on certain property of the judgment debtor, and it was later sold to Wilson. Following the sale, Williams obtained a rule for the sheriff to show cause why he should not pay over to him the amount received from the execution sale. The sheriff responded he did not *1262 know whether any execution ever came into his hands from Williams, but that if it did, it was destroyed in the fire.
The Florida Supreme Court stated the rule was that as between the two different plaintiffs, if two writs of execution are delivered to the sheriff on different days, he ought to execute that which was first delivered, but if he levies and sells by virtue of the writ last delivered, the property of the goods is bound by the sale and the senior lienor cannot seize them. The reason given for the rule is "that sales made by the sheriff ought not to be defeated; for if they are, no man will buy goods levied upon a writ of execution." 4 Fla. at 135. An additional reason for the court's decision was that a distinction must be made between the lien of a judgment on land and the lien of an execution upon personalty. In the first case the lien is a matter of record and the other is not, except from the time of delivery to the sheriff. The court continued:
"The purchaser of personalty cannot suppose that the officer has committed any impropriety in the performance of his duty, and even if he desired to examine into the propriety of his action, he has not the means of doing so; while on the other hand, if land is offered for sale by the sheriff, the lien being by judgment, it is a matter of record, and the purchaser can, by examination of the records, satisfy himself whether there are any other and superior prior liens upon the property." 4 Fla. at 136.
It concluded that the senior creditor had a right of action only against the sheriff for his breach of duty in not executing the first writ which was delivered to him.
It should be observed that there are several distinctions between the facts here and those in Love, Sheriff v. Williams, supra. The court's opinion was concerned with the validity of execution sales of personal property, particularly as to sales made to bona fide purchasers for value. Here, Carantzas was placed upon notice that the property was to be sold subject to all prior liens, and the notice specifically advised him the numbers of Flagship's two prior writs of execution. He could hardly claim, as could the junior execution creditor in Love, he was without notice of the senior writs of execution. Additionally, in 1866, 15 years after Love was decided, Ch. 1553, Sections 1-3, Laws of Florida (1866), now Section 30.17, Florida Statutes (1975), was enacted, mandating the sheriff to keep an execution docket. As a result a prospective purchaser need only examine the sheriff's docket book to determine if any prior execution liens exist. Since both Carantzas and the sheriff were on notice of Flagship's prior liens, unlike the situation in Love, the facts here are more analogous to those in Million v. Commonwealth, 40 Ky. (1 B. Mon.) 310 (1841), where it was held that a prior claim must first be paid from the proceeds of an execution sale, even though the sale is made upon a writ subsequent to the prior claimant's, if the prior claim was brought to the notice of the officer at the time of the sale.
As a general rule an officer at an execution sale must sell the property bid for cash and has no right to sell for credit, with the exception of a sale made to the judgment creditor who may credit the amount of his debt on the execution if the costs of the sale are paid. 33 C.J.S. Executions § 217 (1942). We do not perceive, however, that one holding a junior execution writ may be permitted to make a credit bid when the notice of the sale placed the junior lienholder on notice of the senior creditor's prior executions and also stated that the property would be sold, subject to all prior liens, to the highest and best bidder for cash. If Carantzas were allowed to make a credit bid under such circumstances, a creditor having the largest judgment might always prevail regardless of the priority of other liens. Consequently there would be no point in establishing priority in the delivery of writs of execution to the sheriff if all creditors could simply assemble at an execution sale and offer credit bids in an amount equal to the amount recovered by their judgments.
The highest bidder at an execution sale acquires no title to the thing purchased *1263 until payment of the purchase price. 33 C.J.S. Executions § 289 (1942), and if a sheriff gives a bill of sale to the purchaser without receiving payment of the purchase money, the bill of sale may be set aside. 30 Am.Jur.2d, Executions, section 382 (1967). If a sale is invalid, courts have the power to vacate a sale made under a writ of execution. Lawyers Co-Op. Publishing Co. v. Bennett, 34 Fla. 302, 16 So. 185 (1894). Because of the invalidity Carantzas acquired only the interest of a judgment debtor whose interest was subject to Flagship's prior liens. Wildwood Crate and Ice Company v. Citizens Bank, 98 Fla. 186, 123 So. 699 (1929); Bradley v. Forbs, 116 Fla. 350, 156 So. 716 (1934).
Carantzas states in his brief that the property sold to him has since been sold to other persons, although this is not established in the record. If this is so, Flagship has, as indicated in Love, Sheriff v. Williams, supra, a possible action against the sheriff for not executing that writ which was first delivered to him. Section 30.30(2), Florida Statutes (1975), prohibiting the sheriff from damages for wrongful levy, would not apply to such action since here the levy was correctly made, but not the execution sale.
Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.
RAWLS, Acting C.J., and SMITH, J., concur.