In re Eugene M. CONE, Debtor.

SUN BANK, N. A., Plaintiff,

v.

Walter W. SNELL, Trustee; Eugene M. Cone; and Cooper Industries, Inc., d/b/a Cooper Airmotive, Defendants.

Bankruptcy No. 80–971–ORL–BK–GP.
Adv. No. 81–29.

United States Bankruptcy Court,
M. D. Florida,
Orlando Division.

June 19, 1981.

Patrick T. Christiansen, Orlando, Fla., for plaintiff.

Christopher Skambis, Orlando, Fla., for defendants.

## FINDINGS OF FACT AND MEMORANDUM OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

### Findings of Fact

Upon stipulated facts, the Court makes the following findings:

1. On June 19, 1980, Cooper Industries, Inc., obtained a judgment by default against, *inter alia*, the debtor in the United States District Court for the Northern District of Texas in the amount of $86,606.72 together with interest at the rate of 9 per cent per annum.

2. On August 1, 1980, the final judgment was registered pursuant to 28 U.S.C. § 1963 in the United States District Court for the Middle District of Florida.

3. On August 12, 1980, a writ of execution was issued from the United States District Court for the Middle District of Florida and was docketed with the United States Marshal for the district. The writ directed the Marshal to levy upon all real and personal property of the debtor sufficient to satisfy the judgment.

4. On September 17, 1980, the debtor purchased an aircraft. Sun Bank, N.A., loaned the debtor the sum of $19,390.83 for the purpose of financing the purchase of the aircraft. Sun Bank, N.A., secured the loan by taking a security interest in the aircraft.

5. On September 24, 1980, Sun Bank perfected its security interest in the aircraft by recording the security agreement with the appropriate office of the Federal Aviation Administration.

6. On November 26, 1980, the United States Marshal levied upon and seized the aircraft pursuant to the writ of execution.

7. On December 18, 1980, a voluntary petition for relief under Title 11 was filed by the debtor.

8. The debtor defaulted under the promissory note and security agreement by failing to make payments, and there is now due and owing to Sun Bank, N.A., the sum of $20,556.65 together with interest thereon

from March 2, 1981, at a per diem rate of $7.30, plus attorneys' fees due under the security agreement.

### Memorandum of Law

Sun Bank, N.A., and Cooper Industries, Inc., each claim an interest in the aircraft superior to all other parties. Sun Bank's claim is based on its perfected security interest; Cooper Industries claims a lien on the property by virtue of the writ of execution docketed with the Marshal. The Trustee has abandoned the aircraft, thus disclaiming any interest in it on behalf of the estate, and the debtor asserts no claim or interest in the property.

Sun Bank contends that under § 679.312, *Florida Statutes*, its interest, as a purchase money security interest, attached simultaneously with the purchase of the aircraft by the debtor. Sun Bank's reliance on the Florida Uniform Commercial Code is misplaced. Section 679.104(1), *Florida Statutes*, provides that Article 9 of the Florida UCC does not apply:

> To a security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property.

Further, Sections 679.302(3)(a) and (4) provide that filing a financing statement is not necessary or effective when a federal statute controls perfection. Section 679.302(4) specifically states:

> Compliance with a statute or treaty described in subsection (3) is equivalent to the filing of a financing statement under this chapter, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith . . . .

Security interests in aircraft are subject to a statute of the United States. Title 49, United States Code, Section 1403 requires that a security interest in aircraft, to be valid against third persons, must be filed for recordation in the office of the Secretary of Transportation or other designated office. Title 49 does not contain any provisions that permit a security interest to relate back in time before it was actually recorded.

The Federal Aviation Act created a framework for a national system to record certain interests in aircraft and major aircraft components. There is no question that Congress has preempted the field of registration and recording of title instruments affecting aircraft. *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220 (5th Cir. 1978). The provisions of the Federal Aviation Act also preempt state laws insofar as they relate to the priority of liens. *In re Holiday Airlines Corp. (Danning v. Pacific Propellor, Inc.)*, 620 F.2d 731 (9th Cir. 1980). Section 329.01 *Florida Statutes*, recognizes this federal preemption of recordation of interests in aircrafts and the rights derived therefrom. *O'Neill v. Barnett Bank of Jacksonville, N. A.*, 360 So.2d 150 (Fla. 1st DCA 1978). Section 329.01 further provides that:

> Any instrument, recordation of which is required by the provisions of this section, shall take effect from the date of its recordation and *not* from the date of its execution.

Thus, federal law preempts Section 679.312, *Florida Statutes*, to the extent it permits a purchase money security interest in aircraft filed within ten (10) days to be perfected as of the date of the execution of the security agreement. There is no question that on September 17, 1980, Sun Bank obtained an unperfected security interest in the aircraft, which security interest was perfected on September 24, 1980.

Cooper Industries asserts that its lien is superior to the security interest of Sun Bank because it acquired its lien on August 12, 1980, when its writ was docketed with the United States Marshal and this was prior to the time when Sun Bank acquired its security interest.

Florida courts have created and enforced liens on personal property of judgment debtors when a writ of execution is delivered for docketing to the sheriff of the county in which the personal property is

located. Florida law does not require a levy in order to perfect the lien created. As a result, the lien is created and perfected upon delivery of the writ of execution to the sheriff. The lien attaches to all personal property of the judgment debtor in the county in which the writ is docketed whether such personal property is then in existence or is later acquired by the judgment debtor. *Willard v. Petruska*, 356 F.2d 422 (5th Cir. 1966); *Love v. Williams*, 4 Fla. 126 (1850); *Flagship State Bank of Jacksonville v. Carantzas*, 352 So.2d 1295 (Fla. 1st DCA 1978).

In *Bank of Hawthorne v. Shepherd*, 330 So.2d 75 (Fla. 1st DCA 1976), on April 7, a bank executed and mailed its notice of lien on a motor vehicle to the Division of Motor Vehicles for notation on its certificate of title. On April 10, the certificate of title was issued noting the lien. On April 8, a creditor delivered its writ of execution to the sheriff where it was docketed. Under Florida law a notice of lien becomes a lien on a motor vehicle on the date it is filed in the Division of Motor Vehicles. Section 319.27(2), *Florida Statutes*. The Court held that the lien of the bank was subordinate to that of the judgment creditor. Applying the facts to the instant case, if Cooper had docketed its writ of execution with the sheriff's office and the subject property was an automobile rather than an aircraft Cooper would prevail over Sun Bank.

The problem is that Florida law does not provide for writs of execution to be issued on foreign judgments, and the sheriff is required to keep an execution docket only for those writs issued to him.

■ The purpose of the Federal Conformity Act, 28 U.S.C. § 1962 is to provide federal court judgments with equal dignity to state court judgments. It provides:

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

If state law requires registration, recordation, docketing, or indexing prior to attachment of a judgment lien, then federal court judgments are subject to those requirements only if the state authorizes the United States District Court judgments to be similarly registered, recorded, docketed, or indexed.

■ Florida law requires certified copies of both state court and United States District Court judgments to be recorded in the public records of any county in the state in which the judgment creditor wishes to obtain a lien upon the real property of the judgment debtor. Section 55.10, *Florida Statutes*. There is no statute creating judgment liens on personal property, but case law mandates that a writ of execution must be docketed with the sheriff in the county in which the personal property is located before the lien attaches. Section 30.17, *Florida Statutes*, requires the sheriff of each county to keep an execution docket and to permit inspection of that docket by any interested party. Florida sheriffs are not required to docket or levy under the authority of federal writs of execution.

The Court has three choices in determining the effect of federal writs of execution docketed with the United States Marshal. The Court could find that:

(a) State law does not provide for the docketing of federal court writs of execution with the sheriffs of the state. Therefore, a federal court writ of execution becomes a lien on personal property of the judgment debtor when it is issued. See, Fed.R.Civ.P. 69(a) and 28 U.S.C. § 1962.

(b) State law is applicable to the extent that it can be interpreted to provide that the federal court writ of execution is effective when it is docketed with the United States Marshal.

(c) A federal court writ of execution, unlike a state court writ of execution, does not become a lien on personal property of the judgment debtor until the United States Marshal actually levies upon the property.

Option (c) above would make it easier for the holder of a state court judgment to establish the priority of his rights to the judgment debtor's assets, but would violate Fed.R.Civ.P. 69(a) and 28 U.S.C. § 1962. Case authority with respect to options (a) and (b) above is sparse. However, the Court is aware of several decisions in various federal courts which at least imply that the proper result would be obtained by choosing option (b) above. In *Mission Bay Campland, Inc. v. Sumner Financial Corp.*, 71 F.R.D. 432 (M.D.Fla.1976), the court held that Section 56.29, *Florida Statutes* (1969), providing for supplementary proceedings in aid of execution was applicable to federal court judgment enforcement. While the case report does not specifically so state, a federal court judgment had apparently been entered against the defendants and federal writs of execution had been docketed with the United States Marshal. The court noted that one of the two jurisdictional prerequisites for post-judgment supplementary proceedings in Florida was that a writ of execution be returned unsatisfied. However, Section 56.29, *Florida Statutes*, refers to writs of execution held by "any sheriff" and is silent with respect to writs of execution held by a federal marshal. The court's implicit holding was that sheriffs and federal marshals, to the extent possible, are equivalent for purposes of enforcing federal court judgments. Similarly, in *S. Birch and Sons Construction Co. v. Capehart*, 192 F.Supp. 330 (D.Alaska 1961), the district court was faced with determining the priority of various execution liens and tax liens. In determining the priorities of the various liens involved, the court held that a writ of execution in the hands of the United States Marshal was the equivalent of a state writ of execution under Alaska's statute.

Sun Bank argues that the special treatment a purchase money security interest receives under the Uniform Commercial Code should also apply here. It reasons that the debtor would not have acquired the property unless the secured creditor financed the transaction and that it is grossly unfair to require Sun Bank to finance the aircraft purchase and then be subject to a prior lien. This contention can be answered simply: if Congress had intended to permit a relation back provision for purchase money financiers, the Federal Aviation Act would so provide.

█ However, for the same reason that a UCC financing statement is not required for an aircraft, the Court holds that neither a writ of execution docketed with a sheriff or with the Marshal creates a lien on property subject to 49 U.S.C. § 1403. Actual seizure or attachment of the aircraft is necessary to "perfect" a judgment lien on aircraft.

█ The whole purpose of systems of recordation of ownership and security interests, such as maintained by the United States Secretary of Transportation, the Florida Secretary of State, or a sheriff's execution docket is to provide a ready means for prospective financiers or purchasers of property to search for competing interests. The Florida judgment recordation provisions apply to property located in which the county the judgment or writ of execution is recorded. Airplanes are uniquely mobile, and the Federal Aviation Act provides a uniform national means of registering aircraft ownership and security interests. To fully protect itself, under Cooper's theory, Sun Bank would have had to examine the execution docket of every sheriff and marshal in the state where the plane might be "located," not to mention other states. Possession gives notice. *See,* UCC 9–305 (Possession of Security by Secured Party Perfects Security Interest Without Filing), 9–301(3) ("Lien Creditor"

defined as "creditor who has acquired a lien on the property involved by attachment, levy, or the like"). Because it would permit a security interest in aircraft to attach without notice, Florida case law creating a lien on personal property upon the docketing of a writ of execution with the sheriff (or marshal) is in derogation to the notice scheme provided by seizure or by compliance with 49 U.S.C. § 1403 and is invalid as to aircraft.

The Court will separately enter a final judgment in accordance with the foregoing.